Approved: _____
THOMAS S. BURNETT
Assistant United States Attorney

Before:  THE HONORABLE GABRIEL W. GORENSTEIN
         United States Magistrate Judge
         Southern District of New York

**22 MAG 1758**

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :

        - v. -                    :

ASHLY CAMACHO SOTO, and           :
RENE VICTORIA RODRIGUEZ,          :

                                  :

                Defendants.       :

- - - - - - - - - - - - - - - - - - X

<u>**SEALED COMPLAINT**</u>

Violation of 18 U.S.C.
§§ 1349 & 1956

COUNTY OF OFFENSE:
New York, Bronx

SOUTHERN DISTRICT OF NEW YORK, ss.:

        DANIEL ALESSANDRINO, being duly sworn, deposes and says
that he is a Detective with the New York City Police Department
("NYPD") and a Task Force Officer assigned to the Financial Crimes
Task Force with the United States Secret Service ("USSS"), and
charges as follows:

<u>COUNT ONE</u>
(Conspiracy to Commit Bank Fraud)

        1.   From at least in or about June 2021, up to and
including at least in or about February 2022, in the Southern
District of New York and elsewhere, ASHLY CAMACHO SOTO and RENE
VICTORIA RODRIGUEZ, the defendants, and others known and unknown,
willfully and knowingly did combine, conspire, confederate, and
agree, together and with each other, to commit bank fraud, in
violation of Title 18, United States Code, Section 1344.

        2.   It was a part and object of the conspiracy that
ASHLY CAMACHO SOTO and RENE VICTORIA RODRIGUEZ, the defendants,
and others known and unknown, willfully and knowingly would and
did execute and attempt to execute a scheme and artifice to defraud
financial institutions, the deposits of which were then insured by
the Federal Deposit Insurance Corporation, and to obtain moneys,

funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Section 1349.)

<u>COUNT TWO</u>
(Money Laundering Conspiracy)

3.    From at least in or about June 2021, up to and including at least in or about February 2022, in the Southern District of New York and elsewhere, ASHLY CAMACHO SOTO and RENE VICTORIA RODRIGUEZ, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree, together and with each other, to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1957(a).

4.    It was a part and object of the conspiracy that ASHLY CAMACHO SOTO and RENE VICTORIA RODRIGUEZ, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, bank deposits, transfers, and withdrawals, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the conspiracy to commit bank fraud and wire fraud charged in Count One of this Indictment, with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

5.    It was a further part and object of the conspiracy that ASHLY CAMACHO SOTO and RENE VICTORIA RODRIGUEZ, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, bank deposits, transfers, and withdrawals, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the conspiracy to commit bank fraud and wire fraud charged in Count One of this Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the

specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

6. It was a further part and object of the conspiracy that ASHLY CAMACHO SOTO and RENE VICTORIA RODRIGUEZ, the defendants, and others known and unknown, within the United States, knowingly would and did engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, to wit, the conspiracy to commit bank fraud and wire fraud charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

7. I am a Detective with the NYPD and a Task Force Officer assigned to the Financial Crimes Task Force with the USSS. I have been personally involved in the investigation of this matter. This affidavit is based on, among other things, my conversations with employees of financial institutions, my conversations with other law enforcement officers, my examination of reports and records prepared by law enforcement officers, my review of financial records, and my involvement in this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

8. Based on my participation in this investigation, I have learned that ASHLY CAMACHO SOTO and RENE VICTORIA RODRIGUEZ, the defendants, have participated in a scheme that involves opening corporate bank accounts, receiving the proceeds of fraudulent wire transfers into those bank accounts, and then either withdrawing the fraudulently obtained proceeds or transferring them to other bank accounts. SOTO and RODRIGUEZ are responsible for attempting to steal over $3 million through their scheme.

### The "ACS In Line" Accounts

9. Based on my review of records from three banks ("Bank-1" through "Bank-3") and my conversations with employees of

those banks, I have learned, in substance and in part, the following:

a. On or about April 6, 2021, ASHLY CAMACHO SOTO, the defendant, opened a bank account at Bank-1 for a company called "ACS In Line Inc." ("ACS Account-1"). SOTO provided her name, an address ("Address-1"), and listed a particular phone number ("Phone Number-1") as the contact number for the account.

b. On or about April 26, 2021, a company ("Victim-1") wired approximately $150,209 to ACS Account-1.

c. On or about April 27, 2021, approximately $88,912 was wired from ACS Account-1 to a bank account at a bank in China.

d. Between on or about April 27 and April 28, 2021, bank surveillance videos captured SOTO withdrawing approximately $17,500 from ACS Account-1. I was able to identify SOTO as the individual in the videos because I have seen SOTO in person and reviewed photographs of her on law enforcement databases.

e. On or about April 7, 2021, SOTO opened a bank account at Bank-2 for a company called "ACS In Line Inc." ("ACS Account-2"). SOTO provided her name, Address-1, and listed a Phone Number-1 as the contact number for the account.

f. On or about August 24, 2021, a company ("Victim-2") wired approximately $110,608.40 to ACS Account-2.

g. On or about August 25, 2021, SOTO withdrew approximately $15,000 from ACS Account-2 and closed ACS Account-2, receiving a closing check with the balance of approximately $95,626.40. I was able to identify SOTO as the person making the withdrawal and account closure because SOTO provided her driver's license to Bank-2 and surveillance videos captured her at a Bank-2 branch during the time of the transactions.

h. On or about July 19, 2021, SOTO opened a bank account at Bank-3 for a company called "ACS In Line Inc." ("ACS Account-3"). SOTO provided her name, Address-1, and listed a Phone Number-1 as the contact number for the account.

i. On or about August 25, 2021, surveillance video captured SOTO depositing the $95,626.40 check from the closure of ACS Account-2 into ACS Account-3.

j. Between on or about August 27, 2021 and on or about October 8, 2021, three companies ("Victim-3" through "Victim-5") wired ACS Account-3 money, totaling approximately $315,484.03.

k. Over that same period, approximately $286,788 was wired from ACS Account-3 to bank accounts at banks in China. In addition, video surveillance captured SOTO withdrawing approximately $24,500 from ACS Account-3.

10. Based on my review of records from Banks-1 to -3 and victim complaints maintained on a database run by the Federal Bureau of Investigation ("FBI"), as well as my conversations with victims, I have learned that victims identified above were fraudulently induced to transfer money to ACS Accounts-1 to -3. Specifically, I have learned, in substance and in part, the following:

a. Victim-1 reported, in substance and in part, that Victim-1 had attempted to purchase a boat and wired money to ACS Account-1, believing it was going to pay for the boat. The seller of the boat subsequently informed Victim-1 that the seller never received the money.

b. Victim-2 reported, in substance and in part, that an employee of Victim-2 had received an email that appeared to be from a vendor requesting payment. Victim-2 wired money to make the payment and subsequently learned that the payment had gone to ACS Account-2, instead of the vendor, and that the vendor had never made a request for payment.

c. Victim-3 reported, in substance and in part, that its employees had received emails from a vendor seeking payment. Victim-3 wired money to make the payment and subsequently learned that the payment had gone to ACS Account-3, instead of the vendor.

d. Victim-4 reported, in substance and in part, that its employees had received an email from a customer seeking payment. Victim-4 wired money to make the payment and subsequently learned that the payment had gone to ACS Account-3, instead of the customer.

e. Based on my training and experience, these victim reports show that ACS Accounts-1 and -2 received the proceeds of a scheme to fraudulently induce companies to wire money into bank accounts controlled by the perpetrators.

## The "Lugo Blitz" and "AGR Top Traders" Accounts

11.    Based on my review of records from two banks ("Bank-4" and "Bank-5"), my communication with employees of those banks, my participation in surveillance, and my communications with other law enforcement officers, I have learned, in substance and in part, the following:

a. In or about December 2021, an individual ("Co-Conspirator-1") opened bank accounts at Bank-4 and Bank-5 for a company called "Lugo Blitz Enterprise" ("Lugo Account-1" and "Lugo Account-2," respectively).

b. On or about January 11, 2022, a company ("Victim-6") wired approximately $380,874.23 to Lugo Account-1.

c. On or about January 14, 2022, another company ("Victim-7") wired approximately $38,000 to Lugo Account-2. Between on or about January 6 and January 12, 2022, two other companies also attempted to wire a total of approximately $687,000 to Lugo Account-2, but the wire transfers were stopped before going through.

d. On or about January 12, 2022, approximately $95,000 was wired from Lugo Account-1 to a bank account at a bank in China.

e. On or about January 13, 2022, employees of Bank-4 informed law enforcement that ASHLY CAMACHO SOTO, the defendant, and Co-Conspirator-1 went to a branch of Bank-4, withdrew $17,000 from Lugo Account-1, and wired $187,500 from Lugo Account-1 to a bank account at a bank in China.  Surveillance video shows that Co-Conspirator-1 subsequently went to another bank branch and withdrew approximately $2,000 from Lugo Account-1.

f. Surveillance cameras from outside the first Bank-4 branch referenced above show that SOTO and Co-Conspirator-1 were picked up at the bank by a red Mercedes Benz ("Vehicle-1").  I know that RENE VICTORIA RODRIGUEZ, the defendant, uses Vehicle-1 because of, among other things, the following:

i.    RODRIGUEZ's brother is the registered owner of Vehicle-1.

ii.    Vehicle-1 is registered to an address in the Bronx, New York ("Address-2").  Based on my review of RODRIGUEZ's driver's license and my review of mail covers obtained from the

United States Postal Service, I know that Address-2 is listed as RODRIGUEZ's address on his driver's license and that RODRIGUEZ receives mail at Address-2. Based on my conversation with a Customs and Border Patrol agent, I also know that RODRIGUEZ gave Address-2 as his home address upon entering the country in November 2021 from a trip abroad. Law enforcement have also seen RODRIGUEZ entering Vehicle-1 near Address-2.

        iii.  Based on my conversations with the owner of a towing company, I know that, in February 2022, Vehicle-1 was taken to the towing company's lot after an accident, and RODRIGUEZ went to the towing company's lot, retrieved items from Vehicle-1, presented his driver's license, and told an employee of the towing company that he had been driving Vehicle-1 at the time of the accident.

        iv.  Finally, as described further below, I and other law enforcement officers have observed RODRIGUEZ driving Vehicle-1. I am able to recognize RODRIGUEZ because I have seen him in person and have reviewed photographs of him from law enforcement databases and social media.

        g. On or about January 14, 2022, I and other law enforcement officers conducted surveillance on SOTO and RODRIGUEZ. I and other law enforcement officers saw RODRIGUEZ driving Vehicle-1. RODRIGUEZ picked up SOTO and Co-Conspirator-1. The three then drove to multiple Bank-4 branches, and SOTO and Co-Conspirator-1 went into each branch. RODRIGUEZ then drove SOTO and Co-Conspirator-1 to a Bank-5 branch. SOTO and Co-Conspirator-1 withdrew approximately $4,000 from Lugo Account-2.

        12.  Similarly, based on my review of records from Bank-5, my participation in surveillance, and my conversations of other officers who have participated in surveillance, I have learned, in substance and in part, the following:

        a. On or about January 21, 2022, RENE VICTORIA RODRIGUEZ, the defendant, was driving Vehicle-1.

        b. RODRIGUEZ picked up ASHLY CAMACHO SOTO, the defendant, and two men ("Co-Conspirator-2" and "Co-Conspirator-3"). RODRIGUEZ drove them to a Bank-5 branch, and SOTO, Co-Conspirator-2, and Co-Conspirator-3 went inside.

        c. While RODRIGUEZ was waiting outside the Bank-5 branch, I observed him changing the windshield wiper fluid for Vehicle-1.

d. Co-Conspirator-2, with SOTO's assistance, opened a bank account at Bank-5 for a company called "AGR Top Traders, Inc." To date, that account does not appear to have received any wire transfers.

13. Based on my review of records from Banks-4 and -5 and victim complaints maintained on a database run by the FBI, as well as my conversations with victims, I have learned that victims identified above were fraudulently induced to transfer money to Lugo Accounts-1 and -2. Specifically, I have learned, in substance and in part, the following:

a. Victim-6 reported, in substance and in part, that it received an email from what it believed was a client seeking funds. Vicitm-6 wired money to make the payment and subsequently learned that the payment had gone to Lugo Account-1, instead of the client.

b. An individual ("Individual-1") who performed work for Victim-7 reported, in substance and in part, that Individual-1 had submitted an invoice to Victim-7. Victim-7 confirmed receipt of the invoice and told Individual-1 that it had received another email saying that Individual-1's bank account information had changed. Individual-1's bank account information had not changed, so Individual-1 reported to law enforcement and Victim-7 that someone else must have sent the email about the changed bank account.

c. Victim-8 reported, in substance and in part, that an employee of Victim-8 received an email that appeared to be from another Victim-8 employee, saying that Victim-8 needed to wire money to a particular bank account. After Victim-8 sent the money, an employee realized that the email directing the wire was not legitimate, and that the email account of the employee that sent the direction appears to have been hacked.

d. Based on my training and experience, these victim reports show that Lugo Accounts-1 and -2 received the proceeds of a scheme to fraudulently induce companies to wire money into bank accounts controlled by the perpetrators.

### The "Torres Top Trader" Accounts

14. Based on my review of records from Bank-4 and another bank ("Bank-6"), my communication with employees of those banks, my participation in surveillance, and my communications

with other law enforcement officers, I have learned, in substance and in part, the following:

        a. Between on or about June 2 and June 7, 2021, an individual ("Co-Conspirator-4") opened bank accounts at Bank-4 and Bank-6 for a company called "Torres Top Trader Inc." ("Torres Account-1" and "Torres Account-2," respectively).

        b. Surveillance video from Bank-4 shows that, on or about June 2, 2021, ASHLY CAMACHO SOTO, the defendant, was with Co-Conspirator-4 when Co-Conspirator-4 opened Torres Account-1. I am able to recognize Co-Conspirator-4 because I have seen Co-Conspirator-4 in person and reviewed photographs of Co-Conspirator-4 on law enforcement databases.

        c. Between June and July 2021, Torres Account-1 and Torres Account-2 received wire transfers totaling over $1 million, much of which was subsequently withdrawn or transferred to other accounts. Specifically:

        i. Between on or about June 21 and July 6, 2021, two companies ("Victim-9" and "Victim-10") wired Torres Account-1 money, totaling approximately $777,453.20.

        ii. On or about June 22, 2021, approximately $27,000 was wired from Torres Account-1 to another bank account.

        iii. Also on June 22, 2021, approximately $5,200 in cash was withdrawn from Torres Account-1, using a Bank-4 branch in Yonkers, New York.

        iv. Between on or about June 30 and July 14, 2021, four companies ("Victim-11" through "Victim-14") wired Torres Account-2 money, totaling approximately $688,565.94.

        v. Between on or about July 2 and July 12, 2021, approximately $480,540.10 was wired from Torres Account-2 to a bank account at a bank in China.

        vi. Between on or about July 1 and July 9, 2021, approximately $97,950 in cash was withdrawn from Torres Account-2 at Bank-6 branches in Manhattan, Queens, and the Bronx, New York. Surveillance videos from Bank-6 branches captures Co-Conspirator-4 making some of the withdrawals.

        vii. Surveillance video from Bank-6 also captures RENE VICTORIA RODRIGUEZ, the defendant, making a withdrawal from

Torres Account-2 that took place on or about July 9, 2021 in the Bronx, New York.

15.     On or about September 8, 2021, I participated in an arrest of Co-Conspirator-4.  Law enforcement officers seized Co-Conspirator-4's phone incident to that arrest.  A search of the phone revealed that Co-Conspirator-4 communicated with ASHLY CAMACHO SOTO and RENE VICTORIA RODRIGUEZ, the defendants, about Torres Accounts-1 and -2.  Specifically, messages from Co-Conspirator-4's phone show, in substance and in part, the following:

a. Between in or about June and August 2021, Co-Conspirator-4 exchanged numerous WhatsApp messages with Phone Number-1.  As explained above, SOTO uses Phone Number-1.

b. In the WhatsApp messages between Co-Conspirator-4 and SOTO, the two discussed, among other things, going to banks, and Co-Conspirator-4 sent SOTO photographs of documents and bank webpages with information for Torres Accounts-1 and -2.

c. Between June and July 2021, Co-Conspirator-4 exchanged numerous WhatsApp messages with another phone number ("Phone Number-2").

d. I have learned that RODRIGUEZ is the user of Phone Number-2 for, among other things, the following reasons:

i. Based on my review of cellphone location data for Phone Number-2, obtained pursuant to a warrant, I have learned that, between on or about June 18 and July 10, 2020, Phone Number-2 was regularly in the vicinity of Address-2 during the nights.  As explained above, RODRIGUEZ resides at Address-2, so this pattern is consistent with RODRIGUEZ being the user of Phone Number-2.

ii. As explained above, surveillance video from Bank-6 captured RODRIGUEZ making a withdrawal from Torres Account-2 on or about July 9, 2021.  Cellphone location information shows that Phone Number-2 was in approximately the same location as RODRIGUEZ at the time of the withdrawal.[1]

---

[1] Phone Number-2 is not registered to RODRIGUEZ.  It is registered under the name of a different individual, with an address near Address-2.  Based on my training and experience, it is common for individuals engaged in financial fraud to use fake or stolen identities to subscribe to cellphone plans and other accounts, in order to make detection by law enforcement more difficult.

e. In the WhatsApp messages between Co-Conspirator-4 and RODRIGUEZ, the two exchanged, among other things, images of webpages and documents for Torres Accounts-1 and -2, messages about wire transfers, and fake invoices for several of the victims that sent money to Torres Accounts-1 and -2.

16. Based on my review of records from Banks-4 and -6 and victim complaints maintained on a database run by the FBI, as well as my conversations with victims, I have learned that victims identified above were fraudulently induced to transfer money to Torres Accounts-1 and -2. Specifically, I have learned, in substance and in part, the following:

a. Victim-9 reported, in substance and in part, that it received an email from what appeared to be a regular business partner, asking Victim-1 to send a payment to a particular bank account. Victim-9 wired the money to Torres Account-1, believing it to belong to the business partner, but subsequently learned that the business partner had not received the money and had not sent Victim-10 a request for money.

b. Victim-10 reported, in substance and in part, that its employees had received an email from what appeared to be one of its regular vendors, directing Victim-10 to send a payment. Victim-10 wired the money to Torres Account-1, believe it to belong to the vendor, but subsequently learned that the request had not come from its actual vendor, but from an individual impersonating the vendor using a slightly modified email address.

c. Victim-11 reported, in substance and in part, that is employees had received an email from what appeared to be one of its regular vendors, directing Victim-11 to send a payment. Vicitm-12 wired the money to Torres Account-2, believing it to belong to the vendor, but subsequently learned that the vendor did not receive the money or directed Victim-11 to send money to Torres Account-2.

d. Bank records show that Victims-12 and -13 listed major consulting and law firms as the intended recipients of wire transfers that went to Torres Account-2. This is consistent with Victims-13 and -14, like other victims described in this Complaint, being deceived into wiring money to Torres Account-2.

e. Based on my training and experience, these victim reports show that Torres Accounts-1 and -2 received the proceeds of a scheme to fraudulently induce companies to wire money into

bank accounts controlled by the perpetrators.

## The "Rosa Tried and True" Accounts

17.    Based on my review of records from Bank-3 and Bank-4, my communication with employees of those banks, my participation in surveillance, and my communications with other law enforcement officers, I have learned, in substance and in part, the following:

a. Between on or about May 29 and June 2, 2021, an individual ("Co-Conspirator-5") opened bank accounts at Bank-3 and Bank-4 for a company called "Rosa Tried and True Inc." ("Rosa Account-1" and "Rosa Account-2," respectively).

b. Surveillance video from Bank-3 shows that, on or about June 2, 2021, ASHLY CAMACHO SOTO, the defendant, was with Co-Conspirator-5 when Co-Conspirator-5 opened Rosa Account-1.  I am able to recognize Co-Conspirator-5 because I have reviewed photographs of Co-Conspirator-5 on law enforcement databases.

c. In or about June 2021, Rosa Account-1 and Rosa Account-2 received wire transfers totaling over $80,000, much of which was subsequently withdrawn or transferred to other accounts. Specifically:

i. On or about June 18, 2021, an individual ("Victim-16") wired approximately $34,999.04 to Rosa Account-2.

ii. Approximately $4,000 in cash was withdrawn from Rosa Account-2, through transactions at two Bank-4 branches in Manhattan.  Surveillance video from one of the withdrawals show that SOTO and Co-Conspirator-5 made the withdrawal.

iii. On or about June 24, 2021, a company ("Victim-17") wired approximately $47,847.94 to Rosa Account-1.

18.    Based on my review of records from Banks-3 and -4 and victim complaints maintained on a database run by the FBI, as well as my conversations with victims, I have learned that victims identified above were fraudulently induced to transfer money to Rosa Accounts-1 and -2.  Specifically, I have learned, in substance and in part, the following:

a. Bank records show that, after Victim-16 wired money to Rosa Account-2, Bank-4 received a request from Victim-16's to reverse the transaction and return the money.

b. Bank records show that, after Victim-17 wired money to Rosa Account-1, Bank-3 received a request from Victim-17's bank to reverse the transaction and return the money.

c. Based on my training and experience, these victim reports show that Rosa Accounts-1 and -2 received the proceeds of a scheme to fraudulently induce companies to wire money into bank accounts controlled by the perpetrators.

19. Based on my review of records from Bank-7, I have learned, in substance and in part, that ASHLY CAMACHO SOTO, the defendant, used a personal bank account to exchange money with personal bank accounts belonging to RENE VICTORIA RODRIGUEZ, the defendant, Co-Conspirator-4, and Co-Conspirator-5. Based on my training and experience, this is further evidence that these individuals worked together in connection with the fraudulent scheme described in this Complaint.

20. Based on my review publicly available corporate records, internet research, and physical surveillance, I have learned, in substance and in part, that the corporations used to open the bank accounts listed above — specifically, ACS In Line, Lugo Blutz, AGR Top Trader, Torres Top Trader, and Rosa Tried and True — do not appear to be real, operating companies that sell goods or provide services, but rather appear to be fronts for the fraudulent scheme described above.

21.  Based on my review of bank records, I have also learned, in substance and in part, that Banks-1 through -7 are insured by the Federal Deposit Insurance Corporation.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of ASHLY CAMACHO SOTO and RENE VICTORIA RODRIGUEZ, the defendants, and that he be arrested, and imprisoned or bailed, as the case may be.

/s/ sworn telephonically
_____
Daniel Alessandrino
Detective, NYPD


Sworn to through the transmission of this Affidavit
by reliable electronic means, pursuant to Federal Rules
of Criminal Procedure 41(d)(3) and 4.1, this
22nd day of February, 2022

_____
THE HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK